Filed 10/31/24  P. v. Dehoop CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
## THIRD APPELLATE DISTRICT
(San Joaquin)

----

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C098817 |
| v. | (Super. Ct. No. MAN-CR-FE-2019-0009965) |
| TED DEHOOP, JR., | |
| Defendant and Appellant. | |

A jury found defendant Ted Dehoop, Jr., guilty of the first degree premeditated and deliberated murder of Nathan McFadden, and found true an enhancement allegation that defendant personally discharged a weapon and caused death.  The trial court sentenced defendant to an aggregate 50 years to life in prison.

Defendant now contends (1) insufficient evidence supports the jury's finding of premeditation and deliberation, and (2) the trial court abused its discretion in declining to strike the firearm enhancement.  Finding no merit in the contentions, we will affirm the judgment.

BACKGROUND

During the relevant time period in the summer of 2019, defendant's father owned many rental properties.  About a week before the murder, defendant, McFadden, and others began work on one of the father's houses.  McFadden was installing wood floors

1

and defendant served as the job foreman. Defendant was much larger than McFadden, did not get along with him, and indicated that he wanted McFadden fired. One day, after defendant instructed everyone to go home, McFadden indicated he would simply return later. As they left the property, defendant told another worker that he wished "that little bastard" (McFadden) would go away or disappear. There was conflicting testimony about whether McFadden had been fired the day before he was killed.

On the day of the murder, McFadden showed up at the worksite. Coworkers heard defendant and McFadden arguing. One of the coworkers testified she did not hear McFadden threaten defendant, but she heard defendant say he had something for McFadden. The next thing she heard was a gunshot. She went outside and saw defendant on the phone calling 911 and McFadden on the ground. McFadden died from a gunshot to the head. Evidence indicated the muzzle of the weapon had been pressed tightly against McFadden's temple.

Defendant told the 911 dispatcher he had a dead body he needed picked up. Defendant also called his father and said, "I took care of [McFadden]." The father testified he never knew defendant to bring a gun to a jobsite. Responding police officers described defendant as cooperative, matter of fact, and calm. They located a firearm on a table two to three feet from McFadden with a magazine and a live round next to it.

According to toxicology reports, McFadden had a high level of methamphetamine in his blood. The People's pathologist testified that typically, a person with that much methamphetamine in their blood could have behavioral issues such as aggression and paranoia. The defense's toxicologist testified that someone with that level of methamphetamine might appear paranoid and typically would be aggressive.

Defendant testified on his own behalf. He said that on the day of the murder, he brought a pistol and ammunition to the jobsite. He said he did so because he believed McFadden would try to kill him.

2

Defendant said that when he first saw McFadden on the day of the murder, defendant was scared because it appeared McFadden was ready to pick a fight. Defendant went to his truck to get his pistol. He loaded it, racked the slide, and returned to the house holding the gun. According to defendant, McFadden asked defendant "is that a gift for me?" Defendant testified he told McFadden to stay away, but McFadden prevented defendant from entering the house by running into him. Defendant pointed the pistol at McFadden and said "stay away from me . . . ; I'm not playing with you." As McFadden got closer, defendant raised the pistol above his head so McFadden could not reach it. Defendant testified McFadden hit him with his body.

Defendant testified McFadden was screaming, "Shoot me, shoot me, shoot me." The victim was jumping up and down and banged his head against the barrel of the pistol when the gun went off. But defendant testified, "I would imagine I pulled the trigger," and "I don't remember doing it, but, yeah." According to defendant, McFadden had something shiny in his hand and defendant thought it was a pocketknife that McFadden was going to use to stab him in the neck. On cross-examination, defendant stated that at some point during the confrontation he decided to shoot McFadden. He testified he angled the gun upward so the bullet would not hurt anyone else.

Defendant told the police McFadden was a "crazy bastard" and that it was "a public service to shoot him." He also told police that he shot McFadden in the head because McFadden was like a rabid dog. Defendant said a rabid dog is not human and needs to be put down.

The jury found defendant guilty of murder and found true that he personally and intentionally discharged a firearm during the murder causing death. (Pen. Code, § 187, subd. (a); 12022.53, subd. (d).)[1] The trial court sentenced defendant to 25 years to life

---

[1] Undesignated statutory references are to the Penal Code.

in prison for the murder (§ 187, subd. (a)), plus a consecutive 25 years to life for the firearm enhancement (§ 12022.53, subd. (d)).

Additional background is set forth in the discussion as relevant to the contentions on appeal.

DISCUSSION

I

Defendant argues there is insufficient evidence of premeditation and deliberation to support his conviction for first degree murder.

"A verdict of deliberate and premeditated first degree murder requires more than a showing of intent to kill. (§ 189.)" (*People v. Koontz* (2002) 27 Cal.4th 1041, 1080.) "A crime is premeditated when it is considered beforehand and deliberate when the decision to commit the crime is formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action. [Citations.] [¶] The process of deliberation and premeditation does not require any extended period of time: ' "The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly . . . ." ' [Citations.] The requirement of premeditation and deliberation excludes acts that are the 'result of mere unconsidered or rash impulse hastily executed.' " (*People v. Gonzalez* (2012) 210 Cal.App.4th 875, 886-887.)

When assessing the sufficiency of the evidence regarding premeditation and deliberation, courts often consider three "*Anderson* factors": planning, motive, and manner of killing. (*People v. Shamblin* (2015) 236 Cal.App.4th 1, 10, citing *People v. Anderson* (1968) 70 Cal.2d 15, 26-27.) "Review on appeal of the sufficiency of the evidence supporting the finding of premeditated and deliberate murder involves consideration of the evidence presented and all logical inferences from that evidence in light of the legal definition of premeditation and deliberation that was previously set

4

forth.  Settled principles of appellate review require us to review the entire record in the light most favorable to the judgment below to determine whether it discloses substantial evidence -- that is, evidence which is reasonable, credible, and of solid value -- from which a reasonable trier of fact could find that the defendant premeditated and deliberated beyond a reasonable doubt.  [Citations.]" (*People v. Perez* (1992) 2 Cal.4th 1117, 1124.)

Here, when viewed in the light most favorable to the judgment, there is substantial evidence of each of the three *Anderson* factors.

As to planning, defendant chose to bring a gun and ammunition to the jobsite on the day of the murder.  Bringing a gun and using it to kill was substantial evidence of planning.  (*People v. Williams* (1995) 40 Cal.App.4th 446, 455.)  Although he claimed he brought the gun to work regularly, coworkers did not know him to bring a gun to the jobsite, and defendant had previously told police it was the first time he needed to bring a gun to work.  The jury was entitled to conclude that defendant brought the weapon to the jobsite in anticipation of McFadden's arrival.

The way defendant went to his truck, retrieved the gun, prepared it for firing, and returned to McFadden is further evidence of planning and deliberation.  And after he shot McFadden, defendant called his father and told him, "I took care of [McFadden]."

As for motive, the evidence demonstrated defendant disliked McFadden.  Defendant told a coworker he wished that "little bastard" would go away or disappear.  He repeatedly told his father he wanted McFadden fired.  Defendant told the police McFadden was a "crazy bastard" and it was "a public service to shoot him."  He also told police he shot McFadden in the head because McFadden was like a rabid dog.

As to the manner of killing, a coworker heard defendant say, "I got something for you."  The next sound was that of the gun going off.  Evidence indicated defendant pressed the muzzle of the gun against McFadden's temple and pulled the trigger.  Shooting the victim in the head at point blank range is sufficient to permit an inference

5

that defendant was acting according to a preconceived design. (*People v. Cage* (2015) 62 Cal.4th 256, 277.)

Defendant points to his own testimony regarding how the encounter with McFadden occurred. But it was for the jury to decide the facts. Evidence contrary to defendant's testimony provided the jury with substantial evidence to reject defendant's version of events and to conclude he deliberately, intentionally, and with premeditation killed McFadden.

## II

Defendant next argues the trial court abused its discretion in declining to dismiss the enhancement under section 12022.53, subdivision (d).

## A

At the sentencing hearing, defense counsel twice asked the trial court to dismiss the 12022.53 firearm enhancement pursuant to section 1385 in the interests of justice. We conclude defendant raised this issue and did not forfeit it as suggested by the People.

In its tentative sentencing ruling, the trial court found applicable the following specific factors in aggravation as set forth in California Rules of Court, rule 4.421: (1) the crime involved great violence, great bodily harm, threat of great bodily harm, and other acts disclosing a high degree of cruelty, viciousness, or callousness (rule 4.421(a)(1)); (2) the defendant was armed and used a weapon when he committed the crime (rule 4.421(a)(2); and (3) the defendant engaged in violent conduct that indicates a serious danger to society (rule 4.421(b)(1)). The trial court found no countervailing mitigating factors as to the crime but did find defendant had no prior record. In denying probation, the trial court also noted the following: the crime was serious, defendant was armed and used a weapon, McFadden was particularly vulnerable, there was a significant physical injury to McFadden, and defendant was the sole and active participant in the murder. (Cal. Rules of Court, rule 4.414(a)(1)-(4), (6).) The trial court also identified the objectives for sentencing set forth in California Rules of Court,

6

rule 4.410. Based on the foregoing considerations, the trial court indicated its tentative sentence was a term of 25 years to life in prison for the murder, and a consecutive 25 years to life for the firearm enhancement.

After further discussion, the trial court said it understood its discretion with regard to dismissing the enhancement, acknowledging the "cataclysmic shift" in California that gives the trial court such discretion. But it found that this was not the appropriate case for such a dismissal and the trial court would not make any change to its indicated sentence.

B

Effective January 1, 2022, Senate Bill No. 81 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1) amended section 1385 "to specify factors that the trial court must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice." (*People v. Sek* (2022) 74 Cal.App.5th 657, 674.) As relevant here, one of those factors is when application of an enhancement could result in a sentence of over 20 years. (§ 1385, subd. (c)(2)(C).)

We review a trial court's decision not to dismiss an enhancement for an abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 374.) " ' "The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' " (*Id.* at pp. 376-377.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.)

Here, the ultimate question before the trial court was whether it was in furtherance of justice to dismiss the firearm enhancement. " '[G]enerally applicable sentencing principles' relevant to a court's determination of whether dismissal is in furtherance of justice 'relat[e] to matters such as the defendant's background, character, and

7

prospects.' " (*People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1097, review granted Apr. 12, 2023, S278894.) "Those principles require consideration of circumstances in mitigation (and aggravation) in the broader context of the recognized objectives of sentencing, which are not limited to public safety." (*Ibid.*, citing Cal. Rule of Court, rule 4.410.) General sentencing objectives include "[p]unishing the defendant" and "[e]ncouraging the defendant to lead a law-abiding life in the future and deterring him or her from future offenses." (Cal. Rules of Court, rule 4.410(a)(2) & (3).)

In applying section 1385 to a sentencing decision, the California Supreme Court has recently stated that "if the court does not conclude that dismissal would endanger public safety, then mitigating circumstances strongly favor dismissing the enhancement. But ultimately, the court must determine whether dismissal is in furtherance of justice. (*People v. Walker* (2024) 16 Cal.5th 1024, 1036 [citing *People v. Ortiz, supra*, 87 Cal.App.5th 1087 with approval.) The *Walker* court further explained, "absent a danger to public safety, the presence of an enumerated mitigating circumstance [listed in the statute] will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*Ibid.*) "[T]here must be substantial, relevant, and credible evidence of aggravating factors to neutralize the 'great weight' of the mitigating circumstances. [Citations.]" (*Ibid.*)

Here, the trial court detailed each of the aggravating factors it found applicable in this case. It also identified the general objectives of sentencing it was applying, including protecting society, punishing defendant, encouraging defendant to lead a law-abiding life, deterring others, preventing defendant from reoffending, securing restitution, and achieving uniformity of sentencing. As it pronounced sentence, the trial court stated it understood its discretion and the shift in California sentencing law. But it said this was not the appropriate case to dismiss the enhancement.

8

The trial court applied the appropriate sentencing principles and weighed the appropriate factors.  It did not abuse its discretion in declining to dismiss the firearm enhancement based on its implicit finding that the aggravating factors neutralized the great weight of the mitigating factor under section 1385, subdivision (c), such that dismissal of the enhancement would not be in furtherance of justice.[2]

DISPOSITION

The judgment is affirmed.

/s/
MAURO, J.

We concur:

/s/
HULL, Acting P. J.

/s/
FEINBERG, J.

---

[2]  The People argue section 1385, subdivision (c)(2)(C) does not apply here because application of the firearm enhancement would not result in a sentence of over 20 years, given that appellant's murder sentence already exceeded that amount.  Because we reject defendant's contention on the merits, we do not address the People's argument.

9